UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LUIS ATARIGUANA-BUELE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil No. 26-12168-LTS |
| | ) |
| WARDEN, PLYMOUTH | ) |
| CORRECTIONAL FACILITY, et al., | ) |
| | ) |
| Respondents. | ) |

MEMORANDUM AND ORDER ON MOTION TO ENFORCE JUDGMENT (DOC. NO. 20)

June 25, 2026

SOROKIN, J.

Before the Court is a motion by Luis Atariguana-Buele, the petitioner in this immigration

habeas case, seeking to enforce the previous Order allowing his habeas petition. Doc. No. 20;

see Doc. No. 11. The motion is ALLOWED for the reasons and to the extent described herein.

Atariguana-Buele, then representing himself, instituted this action by filing a habeas

petition challenging his detention by immigration authorities on May 12, 2026. Doc. No. 1. A

week later, after the respondents filed an abbreviated memorandum opposing the petition, Doc.

No. 10, the Court allowed the petition and ordered the respondents to provide Atariguana-Buele

the following relief:

> Respondents shall release Petitioner by 6 PM on May 26, 2026, unless he is
> provided a bond hearing under 8 U.S.C. § 1226(a) before that time. . . . The burdens
> of proof at any bond hearing are as resolved by the First Circuit in Hernandez-
> Lara[v. Lyons, 10 F.4th 19 (1st Cir. 2021)], and should the immigration judge find
> that the government has met its burden of proof as to flight or danger, they shall
> consider whether any condition, combination of conditions, or less-restrictive
> alternative to detention would ameliorate such risk. . . . If a bond hearing occurs,

> Respondents shall provide a copy of this Order to the Immigration Judge no later
> than at the start of the hearing.

Doc. No. 11.

Immigration Judge ("IJ") Luciana Dubuc convened a bond hearing on May 21, 2026, at which she denied bond upon a finding that Atariguana-Buele, who was still self-represented, "is a danger to the community by clear and convincing evidence." Doc. No. 12-1 at 1. Because the Court had recently reviewed—and deemed constitutionally infirm—several other bond hearings held by IJ Dubuc, and given Atariguana-Buele's lack of counsel, the Court directed the respondents to submit an audio recording of the bond hearing in this case. Doc. No. 13; see Order on Mot. To Enforce J., Palma Aguirre v. Moniz, No. 26-cv-11927 (D. Mass. May 21, 2026), ECF No. 16. They promptly did so. Doc. No. 15. Review of the recording raised serious concerns about the adequacy of the proceeding, so the Court appointed counsel to represent Atariguana-Buele and "evaluate whether further action . . . [was] warranted in connection with this case." Doc. No. 16.

On June 18, 2026, Atariguana-Buele (through court-appointed counsel) filed the motion now pending, arguing that the "pro forma bond hearing" did not comport with the Court's Order because IJ Dubuc did not hold the government to its burden of proof and failed to consider alternatives to detention. Doc. No. 20 at 1–2. The motion was accompanied by a well-crafted memorandum of law. Doc. No. 21.

The respondents filed a short memorandum that they titled an "opposition" in which they expressed somewhat contradictory positions. Doc. No. 24. First, they stated that "the Court should deny [Atariguana-Buele's] motion." Id. at 1. They then noted that Atariguana-Buele was unrepresented and submitted no "documentation in support of his release at the bond hearing," and suggested IJ Dubuc "relied on the documents submitted and the information available." Id.

2

at 2.  (Of course, Atariguana-Buele did not bear the burden of proof at the bond hearing, as binding First Circuit law and this Court's prior Order made clear.)  From there, the respondents pivoted and concluded their brief submission as follows:

> However, following review of the audio of the bond hearing, the Respondents respectfully request the Court order another bond hearing with a different Immigration Judge to conduct a more thorough analysis.  Release, at this juncture, is premature.  Although the Immigration Judge denied bond based on the Petitioner's criminal history, the facts are unknown of why a more in-depth analysis to include alternatives to detention or conditions of release were not discussed.  As such, the Respondents respectfully request another bond hearing be ordered and conducted on a date as soon as the Court would like.

Id. at 2 (emphasis added).  In other words, after "opposing" the motion challenging the adequacy of the bond hearing, the respondents implicitly conceded the hearing did not comply with the terms of the Court's ordered relief.  See Doc. No. 11 (requiring IJ to consider "whether any condition, combination of conditions, or less-restrictive alternative to detention would" mitigate risk of danger).  In taking this position, the respondents did not grapple with the Court's express directive that they "release" Atariguana-Buele by May 26 if he was not provided a bond hearing that adhered to the parameters defined by the Court and the Constitution.

The Court has considered the parties' submissions and listened to the recording of the bond hearing.  This record establishes (and the respondents all but admit) that the bond hearing held in this case failed to comply with this Court's Order and the Constitution's due process guarantee.

As in several prior cases this Court has considered, IJ Dubuc failed to consider alternatives to detention as explicitly required by this Court's order.  Doc. No. 11; see Costa v. McDonald, No. 25-cv-13469-AK, 2026 WL 371198, at *2–3 (D. Mass. Feb. 10, 2026) (holding that, by failing to consider alternatives, IJ had "failed to provide Petitioner with constitutionally sufficient procedure," and discussing supporting caselaw).  Similarly, as in multiple prior cases

3

this Court has considered, IJ Dubuc failed to engage with the information Atariguana-Buele offered to her via his own statements during the hearing. Though he produced no exhibits, Atariguana-Buele verbally advocated (through an interpreter) for his release on bond, including by providing context for his pending charges and describing personal and family circumstances that he urged the IJ to consider. Nothing IJ Dubuc said during the hearing reflected whether she considered, or how she weighed, the information Atariguana-Buele provided.

This Court has emphasized in four previous orders resolving challenges to bond denials by IJ Dubuc the importance of the proceedings at issue in these matters. Adjudicating whether to detain or release another person is one of the most serious tasks judges are asked to perform. It requires conscientious review and consideration of <u>all</u> relevant and available information.[1] Here, the record shows that IJ Dubuc—again—failed to undertake such a review in the manner the Constitution demands. Instead, she rested her denial of bond on a single, unresolved criminal charge, despite a state-court judge having released Atariguana-Buele on conditions including a no-contact order.[2] She did not explain why the release conditions imposed by the state-court judge (or any other combination of conditions) would not suffice to mitigate the danger she believed Atariguana-Buele posed, nor did she engage with his statements to her in support of his

---

[1] Not every person with a pending criminal charge poses a danger to the community, nor does every person who has failed in the past to appear for a court proceeding pose a risk of flight.

[2] The audio recording of the bond hearing reflects that IJ Dubuc's reasoning was limited to the following: "Because of your pending criminal charge and the fact that your children were actually present during this altercation, and your daughter actually had to call 911 to get help, and that there's a no-contact order against you, Sir, I'm denying your bond request, Sir, and find that you're a danger to the community." One obvious alternative to detention in the context presented, with which IJ Dubuc did not engage, would be an order requiring Atariguana-Buele to live elsewhere, rather than return to the residence where the domestic dispute arose—a condition already required by the state-court no-contact order. The record does not suggest IJ Dubuc considered this at all, nor does it explain why the family dispute giving rise to his pending charges renders Atariguana-Buele a danger to the community writ large, or to his family given the orders of the state court.

4

request for bond.  As the Court has admonished the respondents before, the Constitution's due process guarantee requires more.

The relief ordered in this case required the respondents to do one of two things by May 26, 2026: either provide a constitutionally adequate bond hearing, or release Atariguana-Buele.  Doc. No. 11.  The record establishes that the respondents here did neither—a conclusion they do not seriously dispute.  Accordingly, Atariguana-Buele's motion to enforce is ALLOWED.  **The respondents shall RELEASE the petitioner immediately, no later than 3 PM today, June 25, 2026.**  This order is without prejudice to the respondents requiring Atariguana-Buele to comply with reasonable conditions of supervision upon his release, provided such conditions are identified and imposed within seven days of this Order.  The respondents shall, by July 2, 2026, file a status report confirming their compliance with this Order.

One more point, which is woven throughout the foregoing discussion, bears further comment.  This is the fifth case this Court has encountered in which IJ Dubuc denied a person bond after a proceeding that was patently constitutionally deficient, for similar reasons.  See Order at 3 n.1, Palma Aguirre v. Moniz, No. 26-cv-11927-LTS (D. Mass. May 21, 2026), ECF No. 16; Order, Martinez Aguilar v. McDonald, No. 25-cv-13638-LTS (D. Mass. June 5, 2026), ECF No. 17.  In each case, IJ Dubuc offered only perfunctory reasons for denying bond, giving no meaningful consideration to evidence presented by the petitioners and/or whether alternatives to release might mitigate the risk of danger or flight she found.  In each case, her finding of such risks arose from DHS evidence that was nearly always limited to copies of police reports that had yielded charges (but no criminal convictions) as to which state-court judges tasked with making similar danger-and-flight-risk assessments had determined pretrial detention was not warranted.  In two of the previous cases (Palma Aguirre and Martinez Aguilar), the defects were so glaring

that the respondents conceded the bond hearings had failed to comply with this Court's ordered relief.  And the undersigned is not the only District Judge to have found such defects when reviewing IJ Dubuc's bond denials.  See Elec. Order, Montesinos Olivar v. Wesling, No. 26-cv-11102-ADB (D. Mass. May 7, 2026), ECF No. 14; Memo. & Order at 12–16, Reyes Vargas v. Plymouth Cnty. Corr. Facility, No. 26-cv-11740-AK (D. Mass. May 22, 2026), ECF No. 18; see also Order at 11–15, Miti v. Moniz, No. 26-cv-11327-BEM (D. Mass. Mar. 31, 2026), ECF No. 9 (finding evidence before IJ could not have supported finding of danger by clear and convincing evidence as matter of law).

In light of this series of cases in which the respondents have provided deficient bond hearings at which IJ Dubuc only superficially engaged in the necessary detention analysis despite federal court orders requiring constitutionally adequate detention proceedings, **counsel for the respondents shall review with IJ Dubuc the requirements of this decision, the underlying habeas order requiring a bond hearing, and the First Circuit's decision in Hernandez-Lara**.  This review shall occur orally no later than seven days after issuance of this Order, and the respondents shall file a status report within three days of the review confirming its occurrence.

The Clerk shall serve copies of this Memorandum and Order on the Chief and Deputy Chief of the Civil Division at the United States Attorney's Office for this District.  The Clerk shall then enter judgment and close this case.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge

6